UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| KEVIN ROWE, ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil No. 07-153-ART |
| v. ) | |
| ) | |
| JOHN MOTLEY, Warden, Eastern ) | **MEMORANDUM OPINION** |
| Kentucky Correctional Complex, ) | **AND ORDER** |
| ) | |
| Respondent. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Kevin Rowe filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. R. 1. According to local practice, the matter was referred to United States Magistrate Judge Edward B. Atkins for the preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). Judge Atkins recommended that Rowe's Petition be denied, R. 18, and Rowe objected to that recommendation, R. 20. Having reviewed Rowe's objections de novo, the Court agrees with Judge Atkins's recommendations, and accordingly, the Court denies Rowe's Petition.

I.  BACKGROUND

Rowe states that Judge Atkins's description of the factual and procedural background is correct. R. 20 at 1. As such, the Court will rely on it here.

> Robin and Tammy Hylton, husband and wife, were shot while riding their four-wheeler on a road in a remote area in the Eastern Kentucky mountains. According to Robin, the assailant, who was riding an all-terrain vehicle (ATV), opened fire on them with an assault rifle. Although Robin reached for his own handgun to defend himself, Tammy accidentally knocked the gun from his hand in the melee. Robin fell wounded to the ground and remained motionless as if dead. The assailant walked up to Tammy who was lying across the four-wheeler, and delivered a single shot into her body.

> After the assailant fled, Robin discovered that Tammy was dead. He called 911 on his cell phone and reported that he and his wife had been shot by a young man approximately twenty or twenty-one years old riding a Polaris ATV. While still on the phone, he exclaimed, "Oh, God, he's coming back." Robin tried to flee, but the assailant shot at him again several times and then began beating him on the head with a pistol. The two men wrestled. The assailant pressed the end of the gun barrel to the back of Robin's head and pulled the trigger. Fortunately, the gun was out of bullets. The assailant then fled on an ATV.

R. 18 at 2 (quoting *Rowe v. Commonwealth*, No. 2006-SC-356, 2007 WL 1532334, at *1 (Ky. May 24, 2007)).

Rowe was indicted for the murder of Tammy Hylton and attempted murder of Robin Hylton. *Id.* A Pike county jury found Rowe guilty on both counts, and the trial court sentenced him to life in prison for Ms. Hylton's murder and twenty years for Mr. Hylton's attempted murder, with the sentences to be served concurrently. *Id.* Rowe appealed his conviction to the Kentucky Supreme Court, alleging the trial court erred by: (1) denying his motion to suppress evidence; (2) refusing to allow jurors to read his prepared transcripts of the 911 call placed by Robin Hylton that interpreted inaudible portions of the call; (3) denying his motion for a continuance to allow his DNA expert time to review materials produced in the Commonwealth's expert's DNA analysis; and (4) denying his motions for a mistrial based on the Commonwealth's alleged failure to disclose exculpatory evidence and to disclose a tape-recording of a telephone conversation with his parents from jail. *Rowe*, 2007 WL 1532334, at *1. The court, with one Justice not participating, unanimously affirmed the conviction. *See id.* at *8.

On July 11, 2007, Rowe filed a Petition for Writ of Habeas Corpus in this Court and raised four grounds for relief, including: (1) the denial of his suppression motion; (2) the refusal to allow jurors to review transcripts of his 911 call; and (3) the withholding of exculpatory

evidence. R. 1 at 5–6. As his fourth ground for relief, Rowe raised for the first time that the trial court violated his constitutional right to cross examine all witnesses because it ruled that he was not entitled to certain lab notes and quality assurance data. *Id.* at 5. Unlike in his appeal to the Kentucky Supreme Court, Rowe did not raise in his Petition the trial court's denial of his continuance motion, nor did he raise the non-disclosure of the telephone conversation with his parents. *See id.* at 5–6.

Judge Atkins reviewed Rowe's claims and issued an opinion recommending Rowe's Petition be denied and that the case be dismissed with prejudice. R. 18 at 20. Rowe filed an objection to Judge Atkins's Report and Recommendation claiming the following:

(1) His Fourth Amendment rights were violated by the search of a building located on property adjoining the property covered by the search warrant. R. 20 at 2–3.

(2) His Sixth Amendment cross-examination claim is not procedurally defaulted and, relatedly, his constitutional rights were violated when the trial court failed to grant a continuance. *Id.* at 3.

(3) The Commonwealth withheld exculpatory evidence. *Id.* at 3.

(4) An evidentiary hearing is required.[1] *Id.* at 2.

A district court must make a de novo determination of those portions of a magistrate judge's recommended disposition to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the "statute does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection," *Thomas v. Arn*, 474 U.S. 140, 149 (1985), and as such "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when

---

[1] Rowe did not object to Judge Atkins's recommendation regarding the trial court's exclusion of Rowe's transcripts of the 911 call. This claim, therefore, is waived.

neither party objects to those findings," *id.* at 150; *see also Spencer v. Bouchard*, 449 F.3d 721, 724 (6th Cir. 2006) (stating that a party who receives notice that it must object to a magistrate judge's report "yet fails timely to object is deemed to waive review of the district court's adoption of the magistrate judge's recommendations"); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987) ("[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.").

## II. STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Court] on a question of law," *Williams v. Taylor*, 529 U.S. 362, 405 (2000), or "if the state court confronts a set of facts that are materially indistinguishable from a relevant Supreme Court precedent and nevertheless arrives at a result different" from the Court's precedent, *id.* at 406. A state court decision involves an "unreasonable application" of clearly established Supreme Court precedent when it correctly identifies the governing legal standard but applies it to the facts of the case before it in an objectively unreasonable manner. *See id.* at 409–10.

**III.   FOURTH AMENDMENT CLAIM**

Rowe contends that his Fourth Amendment right to be free from unreasonable searches and seizures was violated when the Kentucky State Police searched a shed at 358 Harless Creek Road and seized an ATV found there because the search warrant covered 390 Harless Creek Road. R. 1 at 5.  The trial court and then the Kentucky Supreme Court reviewed and rejected Rowe's Fourth Amendment claim.  *Rowe*, 2007 WL 1532334, at *3–*4 (noting that the search warrant authorized searches of vehicles of Kevin Rowe not located at 390 Harless Creek, Kevin Rowe's father consented to the search, and the officers relied in good faith on that consent).

Judge Atkins concluded that Rowe had a full and fair opportunity to litigate this claim in state court, and thus, this Court should not revisit it.  R. 18 at 7–8; *see Stone v. Powell*, 428 U.S. 465, 494–95 (1976).  In his objection, Rowe failed to challenge Judge Atkins's conclusion that *Stone* barred his claim; rather, he simply argued that his Fourth Amendment rights were violated by the search and seizure.  R. 20 at 2–3.  As such, Rowe waived any argument that *Stone* does not bar review of the claim.  *See Spencer*, 449 F.3d at 724; *Smith*, 829 F.2d at 1373.

Moreover, even if not waived, the Court agrees with Judge Atkins that *Stone* bars habeas review of the claim because Rowe had a full and fair opportunity to contest the search.  Rowe took full advantage of Kentucky's process by litigating his motion to suppress in the trial court–which included briefing by the parties, an evidentiary hearing, and written findings of fact by the trial court, *see* R. 10, Appx. 2 at A27-A30–and appealing the trial court's decision to the Kentucky Supreme Court.  Thus, *Stone* bars habeas relief.  *See Jennings v. Rees*, 800 F.2d 72, 76 (6th Cir. 1986) (holding that "the record of the suppression hearing conducted by the Kentucky trial court establishes beyond question that [the petitioner] was provided an opportunity for full

and fair litigation of his Fourth Amendment claim"); *Gilbert v. Parke*, 763 F.2d 821, 824 (6th Cir. 1985) (holding that the petitioner "was afforded a full and fair opportunity to contest the arrest and search" because the Kentucky Supreme Court's opinion showed that the court considered the petitioner's Fourth Amendment claim); *Belcher v. Haney*, No. 05-483, 2006 WL 2700709, at *1–*2 (E.D. Ky. Sept. 13, 2006) (holding that *Stone* barred habeas relief on petitioner's Fourth Amendment claim where the trial court denied his motion to suppress after an evidentiary hearing and the Kentucky Supreme Court also rejected the claim).

### IV.  SIXTH AMENDMENT CLAIM AND DENIAL OF MOTION TO CONTINUE

In his Petition, Rowe argues that he "was denied his constitutional right to cross examine all witnesses because [the] trial judge ruled that Petitioner was not entitled to lab notes and [quality assurance data] to ensure the KSP lab was following acceptable standards." R. 1 at 5. Judge Atkins concluded that Rowe procedurally defaulted this claim by failing to fairly present it to the Kentucky Supreme Court. R. 18 at 12–13. Rowe appears to object to that conclusion, *see* R. 20 at 3, and also objects on the ground that the trial court violated his due process rights by failing to grant a continuance of the trial, *id.*

#### A.  Due Process Violation

While Rowe raised the trial court's refusal to continue the trial in his appeal to the Kentucky Supreme Court, he did not raise this issue in his Petition. Instead, in his Petition Rowe argued that his Sixth Amendment right to cross-examination was violated.[2] As such, the Court

---

[2] It is not clear if Rowe claims he never received this information or simply did not receive it in time to prepare adequately for trial. *Compare* R. 1 at 5 (stating that the trial court ruled that Rowe was not entitled to the information regarding the Kentucky State Police lab), *with id.* (stating that Rowe's expert was not provided with this information in time to prepare for trial).

need not address whether the trial court's failure to grant a continuance constituted a due process violation. The Court thus proceeds to determine whether Rowe procedurally defaulted his Sixth Amendment claim.

### B. Procedural Default

"[A] petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures. If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (quotation and citation omitted). In Kentucky, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Simmons v. Commonwealth*, 191 S.W.3d 557, 561 (Ky. 2006) (stating that a motion to vacate, set aside, or correct a sentence under KY. R. CRIM. P. 11.42 is "limited to issues that were not and could not be raised on direct appeal"). Thus, if a Kentucky petitioner fails to raise a claim on direct appeal, which could have been raised there, the claim is procedurally defaulted. *See Williams*, 460 F.3d at 806. A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. *Id.* To fairly present a claim to a state court, a petitioner must assert both the legal and factual basis for his or her claim. *Id.*

**Factual Relation of Claims.** In his appeal to the Kentucky Supreme Court, Rowe argued that the trial court erred by denying his motion for a continuance to allow his DNA expert time to review materials produced in the Commonwealth's expert's DNA analysis, which was allegedly prompted by the Commonwealth's failure to provide information on the procedures it used in

testing the DNA.³ *Rowe*, 2007 WL 1532334, at *1; R. 10, Appx. 5 at A92–A97. Similarly, the Sixth Amendment claim raised in the Petition rests on the disclosure of information regarding the standards and techniques used by the Commonwealth in testing the DNA and the timeliness of that disclosure. *See* R. 1 at 5. Given the factual overlap between these two claims, Rowe fairly presented the factual basis for his Sixth Amendment claim in state court when he presented his due process claim there. *See Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir. 2004) ("Because his prosecutorial misconduct and Confrontation Clause claims rest upon the same factual predicate, petitioner, by presenting his prosecutorial misconduct claim on direct review, also presented the factual basis underlying his Confrontation Clause claim.").

**Legal Basis for Claim.** The issue thus becomes whether Rowe fairly presented the legal basis for his Sixth Amendment claim. In making this determination, a court considers whether: "(1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged 'facts well within the mainstream of the pertinent constitutional law.'" *Id.* (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). These factors demonstrate that Rowe failed to fairly present his Sixth Amendment claim in state court.

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. "[A] primary interest secured by [the

---

³ In the underlying proceedings, the Kentucky State Police used DNA testing to identify blood found on the red Kawasaki ATV seized by the police during their search of 358 Harless Creek Road. *Rowe*, 2007 WL 1532334, at *3. The DNA testing revealed that certain of the blood belonged to Robin Hylton. *Id.*

Confrontation Clause] is the right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (quotation omitted). Rowe presented his claim to the Kentucky Supreme Court in terms of due process and Kentucky state law, not the Confrontation Clause. The heading of the relevant section of Rowe's brief was entitled, "The Trial Court Erred to Appellant's Substantial Prejudice and Denied him Due Process of Law by Failing to Grant a Continuance," R. 10, Appx. 5 at A92, and in contrast to mentioning due process several times, *see id.* at A93 & A97, Rowe never used the terms confrontation or cross-examination in his brief, *see Hicks*, 377 F.3d at 553 (noting that the "petitioner never mentioned the terms *confrontation* or *cross-examination*" in holding that he failed to fairly present his Confrontation Clause claim). While Rowe referenced the Sixth Amendment once in this section of his brief, he did so not to argue that his Confrontation Clause rights were violated, but to argue that failing to grant the continuance denied him "the right to effective assistance of counsel under the 5th, 6th, and the 14th Amendments . . . ." R. 10, Appx. 5 at A97. Rowe, therefore, did not even reference the aspect of the Sixth Amendment he relies on here, which is particularly problematic given the Sixth Amendment's multiple protections in addition to the right of confrontation. *See, e.g., United States v. Lawson*, 535 F.3d 434, 440 (6th Cir. 2008) (public trial by an impartial jury); *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007) (speedy trial); *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007) (assistance of counsel); *United States v. Emuegbunam*, 268 F.3d 377, 400 (6th Cir. 2001) (presentation of one's own witnesses).

      The second and third considerations in determining whether Rowe fairly presented his claim are whether he relied upon federal or state cases employing the constitutional analysis in question. In the relevant section of Rowe's brief to the Kentucky Supreme Court, he failed to

cite a single federal case, *see* R. 10, Appx. 5 at A92–A97, and of the six Kentucky Supreme Court cases he cited there, only *Eldred v. Commonwealth*, 906 S.W.2d 694 (Ky. 1994), references the Sixth Amendment. While the *Eldred* court referenced the Confrontation Clause when addressing the defendant's right to discover medical and psychiatric records of two witnesses against him, *id.* at 701 n.4, 702 n.6, these isolated references in a single state court case are insufficient to fairly present Rowe's Confrontation Clause claim. *See Hicks*, 377 F.3d at 553–54 (stating that petitioner's single reference to one state case discussing the Confrontation Clause and involving different facts than petitioner's case is insufficient to fairly present his Confrontation Clause claim); *McMeans*, 228 F.3d at 682 ("We do not think that a few brief references to the Confrontation Clause in isolated cases is enough to put state courts on notice that such a claim had been asserted."). Further, Rowe cited *Eldred* not for its discussion of the Confrontation Clause but for its identification of the factors courts should consider when determining whether to grant a continuance. *See* R. 10, Appx. 5 at A94, A97.

  The final factor in the fair presentation analysis is whether Rowe alleged facts well within the mainstream of Confrontation Clause precedent. A few circuit cases have addressed whether a court's failure to grant a continuance violates the Confrontation Clause, but the courts in those cases found no violation based on the facts involved. *See Simpson v. Borgert*, No. 85-1926, 1986 WL 17262, at *3 (6th Cir. July 21, 1986); *United States v. Barrett*, 703 F.2d 1076, 1081 n.6 (9th Cir. 1983). Neither of these cases demonstrate that a failure to grant a continuance is "well within the mainstream" of Confrontation Clause precedent. Further, even assuming they do, this factor does not outweigh the other considerations indicating that Rowe did not fairly present his Confrontation Clause claim.

In sum, the Court would severely undermine the comity concerns that give rise to the fair presentation requirement were it to hold that Rowe fairly presented his Confrontation Clause claim simply because his factual allegations possibly support such a claim and even though he never once mentioned the Confrontation Clause to the Kentucky Supreme Court. *See Hicks*, 377 F.3d at 556 ("Were we to hold that petitioner fairly presented his Confrontation Clause claim to the state courts on direct review, state courts would be compelled to consider *sua sponte* all possible federal legal claims that a petitioner's factual allegations might *arguably* support. The principle of comity underlying the exhaustion doctrine does not permit us to force state courts to do so."). Because fair presentation requires Rowe to present the same claim under the same theory to this Court as he did to the Kentucky Supreme Court, *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003), he did not fairly present his Confrontation Clause claim and thus procedurally defaulted it.[4] As he has not attempted to argue cause and prejudice to overcome the procedural default, the Court will not consider the merits of Rowe's Confrontation Clause claim. *See Williams*, 460 F.3d at 805–06 ("Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice.").

---

[4] Rowe's contention that he raised his Sixth Amendment claim in state court because of two affidavits filed there stating that information on the Commonwealth's DNA testing was needed to test the credibility of the results, *see* R. 15 at 2–3, is without merit. Rowe does not indicate whether these affidavits were attached as exhibits to his appellate brief, and it does not appear they were because they are not listed on the brief's exhibit list. *See* R. 10, Appx. 5 at A103. Moreover, the affidavits do not mention cross-examination, confrontation, or otherwise suggest a connection to the Confrontation Clause. *See* R. 15, Attach. 1.

V.  **WITHHOLDING OF EXCULPATORY EVIDENCE**

Lastly, Rowe contends that the Commonwealth withheld exculpatory evidence–in this case, the existence of multiple people interviewed by Kentucky State Police Trooper Sturgill shortly after the shooting–in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). R. 1 at 6. The interviewees were riding ATVs in the same area where the shooting occurred. *Id.*

The Kentucky Supreme Court analyzed Rowe's *Brady* claim as follows:

> At trial, Trooper Sturgill testified to having interviewed ten to fifteen individuals who had arrived on the scene for three to five minutes apiece. According to Trooper Sturgill, none of these people had witnessed the shooting or professed to know of any other relevant information. Nonetheless, he recorded their names and contact information in case other investigating officers saw a need to follow up with them. He gave his own contact information to these individuals in case they thought of anything else later.
>
> Although Trooper Sturgill apparently presented this list of names to other investigating officers, he apparently never memorialized this information in a supplement to the official KSP investigative report. Nonetheless, the lead investigating officer noted in his report, which was provided in discovery at an early date, that Trooper Sturgill had interviewed passers-by. So the defense was on notice that Trooper Sturgill had interviewed people, and the defense could have contacted Trooper Sturgill to find out what he had learned from those he interviewed and followed up with these individuals to obtain further information. Clearly, this information was not truly unknown to the defense, especially since defense counsel noted in his opening statement that there appeared to be thirteen to nineteen witnesses based on radio traffic. Furthermore, the defense definitely became aware of this information during trial when Trooper Sturgill testified, rather than after trial. *Brady* is not applicable.

*Rowe*, 2007 WL 1532334, at *7. Judge Atkins agreed with the court, R. 18 at 15–17, and Rowe objected to that conclusion, R. 20 at 3.

Under AEDPA, "a federal court is to apply a presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to

rebut this presumption." *McAdoo v. Elo*, 365 F.3d 487, 493–94 (6th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)). Rowe has not challenged these factual findings, and indeed, states that he agrees with them. *See* R. 20 at 1 (indicating that he agrees with Judge Atkins's recitation of the factual background). The Court thus presumes as correct the Kentucky Supreme Court's factual findings that: (1) the lead investigating officer noted in his report that Trooper Sturgill had interviewed passers-by and that the Commonwealth provided this report to the defense during discovery; (2) Rowe's counsel noted in his opening statement that there appeared to be thirteen to nineteen witnesses; and (3) Trooper Sturgill testified the people he interviewed had no relevant information. In determining whether the Kentucky Supreme Court's analysis of Rowe's *Brady* claim was contrary to or an unreasonable application of clearly established federal law, the Court will rely on these factual findings. *See Armstrong v. Morgan*, 372 F.3d 778, 781–83 (6th Cir. 2004) (presuming as correct a state court's finding that evidence had been disclosed to defense counsel before trial when analyzing the petitioner's *Brady* claim); *see also McGregor v. Gibson*, 219 F.3d 1245, 1253 (10th Cir. 2000) (presuming as correct a state court's finding that a tape recorded conversation was inaudible and failed to reveal anything relevant when analyzing the petitioner's *Brady* claim), *overruled on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001); *Layton v. Phillips*, No. 04-4032, 2008 WL 413785, at *6 (E.D.N.Y. Feb. 13, 2008) (presuming as correct a state court's finding that the allegedly exculpatory material was a matter of public record and defense counsel should have known of it when analyzing petitioner's *Brady* claim).

Based on these facts, the Supreme Court's *Brady* analysis was not contrary to or an unreasonable application of clearly established federal law. First, "[t]he *Brady* rule only applies

to 'the discovery, *after trial*, of information which had been known to the prosecution but *unknown to the defense.*'" *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). Here, the allegedly exculpatory evidence was not unknown to the defense because of the lead investigator's report indicating Trooper Sturgill had interviewed several people. Second, *Brady* requires reversal of a conviction only where there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense, *id.*, but here the interviewees had no relevant information, making it improbable that their identification would have affected the trial's outcome. Thus, no *Brady* violation occurred, and the Kentucky Supreme Court's conclusion should not be disturbed.

## VI. EVIDENTIARY HEARING

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, ---U.S.----, 127 S. Ct. 1933, 1940 (2007). Furthermore, "[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id.*

In this case, no evidentiary hearing is required. Rowe objected to Judge Atkins's conclusions regarding the search of a property not covered by the search warrant, his Confrontation Clause rights, and the Commonwealth's alleged withholding of exculpatory material. R. 20 at 2–3. The relevant facts required to address these issues can be determined from the record. While Rowe argues that questions of fact exist regarding his access to the

names of individuals interviewed by the Kentucky State Police after the shooting and the search of a property different than the one listed on the search warrant, *id.* at 2, these facts are not necessary to the Court's disposition of the issues presented by his objections to the Report and Recommendation. Moreover, as discussed above, Rowe's claims are insufficient to support habeas relief. Thus, no additional factual inquiry is needed, and Rowe is not entitled to an evidentiary hearing.

### VII. CERTIFICATE OF APPEALABILITY

Finally, the Court also finds that a certificate of appealability should not issue in this case on any of Rowe's claims. To be entitled to a certificate of appealability, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Rowe's claims plainly fail on the merits, and the Court does not believe that a reasonable jurist would find this assessment debatable or wrong.

### VIII. CONCLUSION

Accordingly, it is **ORDERED** as follows:

1. United States Magistrate Judge Edward B. Atkins's Report and Recommendation, R. 18, is **ADOPTED.**

2. Kevin Rowe's objections, R. 20, to the Magistrate Judge's Report and Recommendation are **OVERRULED**.

3. Rowe's Petition for a Writ of Habeas Corpus, R. 1, is **DENIED**.

4. John Motley's Motion to Dismiss, R. 11, and Motion for Summary Judgment, R. 12, are **DENIED AS MOOT**.

5.  The Court recommends that a Certificate of Appealability not issue on any claim raised by Rowe in his Petition. *See* 28 U.S.C. §2253(c).

6.  A separate judgment will be entered contemporaneously with this Memorandum Opinion and Order.

This the 30th day of September, 2008.

Signed By:
*Amul R. Thapar* AT
United States District Judge